1  Christopher Sproul (State Bar No. 126398)
   Jodene Isaacs (State Bar No. 226895)
2  ENVIRONMENTAL ADVOCATES
   5135 Anza Street
3  San Francisco, California 94121
   Telephone: (415) 533-3376, (510) 847-3467
4  Facsimile: (415) 358-5695
   Email: csproul@enviroadvocates.com
5  Email: jisaacs@enviroadvocates.com

6  Fredric Evenson (State Bar No. 198059)
   ECOLOGY LAW CENTER
7  P.O. Box 1000
   Santa Cruz, CA 95061
8  Telephone: (831) 454-8216
   Email: evenson@ecologylaw.com

9  Attorneys for Plaintiff
   ECOLOGICAL RIGHTS FOUNDATION
10

11              UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF CALIFORNIA
12

13  ECOLOGICAL RIGHTS FOUNDATION,          | Civil Case No.
                                            | 2:15-CV-04693-CAS-PJW
14              Plaintiff,
        v.                                  | [PROPOSED] CONSENT
15                                          | DECREE
    BUELLFLAT ROCK COMPANY, INC.,           | (Federal Water Pollution Control
16                                          | Act, 33 U.S.C. §§ 1251 et. seq.)
17              Defendant.

18

19

20

21

22

23

24

25

26

27

28

1    **WHEREAS**, Plaintiff Ecological Rights Foundation ("ERF") is a non-profit
2    public benefit corporation dedicated to the preservation, protection, and restoration
3    of the environment, the wildlife and the natural resources of all waters of
4    California, including the Santa Ynez River;

5    **WHEREAS**, Plaintiff alleges that Defendant Buellflat Rock Company, Inc.,
6    is the owner and/or operator of the Buellflat Rock Facility in Solvang, California
7    (hereinafter "the Facility") and has caused pollutants to be discharged to waters of
8    the United States from the Facility;

9    **WHEREAS**, Defendant avers that Buellflat is the owner and operator of the
10   Facility, and is responsible for compliance with the requirements of the Clean
11   Water Act;

12   **WHEREAS**, Defendant's operations involve bulk aggregate storage,
13   offloading, and sales activities;

14   **WHEREAS**, storm water can flow off-site from the Facility at one main
15   discharge point which discharges into the Santa Ynez River;

16   **WHEREAS,** Plaintiff alleges that discharges from the Facility are regulated
17   by the National Pollutant Discharge Elimination System ("NPDES") General
18   Permit NO CAS000001 [State Water Resources Control Board] Water Quality
19   Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Storm Water
20   Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*
21   ("Clean Water Act" or "CWA");

22   **WHEREAS**, Plaintiff alleges that a new CWA General Permit for industrial
23   activity was adopted April 1, 2014 pursuant to State Water Resources Control
24   Board Water Quality Order No. 14-57-DWQ, effective July 1, 2015 ("2015
25   General Permit") which supersedes Order 97-03-DWQ except for Order 97-03-
26   DWQ's requirement to submit annual reports by July 1, 2015 and except for
27   enforcement purposes.

28   / / /

**WHEREAS,** Plaintiff alleges that on April 18, 2015, ERF provided notice of alleged violations of the CWA by Defendant Buellflat and of ERF's intention to file suit against Buellflat to the Administrator of the United States Environmental Protection Agency ("EPA"); the Regional Administrator of EPA Region IX; the Executive Director of the California State Water Resources Control Board ("State Board"); the Executive Officer of the California Regional Water Quality Control Board, Region 3 ("Regional Board"); the U.S. Attorney General, and the Defendants ("Notice Letter") as required by the CWA, 33 U.S.C. § 1365(b)(1)(A);

**WHEREAS**, on June 19, 2015, Plaintiff filed a complaint against Buellflat, in the United States District Court, Central District of California (Case No. 2:15-cv-04693-CAS-PJW) alleging ongoing violations of the CWA (hereinafter "Complaint");

**WHEREAS**, Buellflat denies all allegations in the Notice Letter and Complaint, and maintains that its operations are and at all times relevant were in compliance with the requirements of applicable law, including the CWA and the Storm Water Permit;

**WHEREAS**, this Consent Decree shall be submitted to the EPA and United States Department of Justice ("DOJ") for the statutory review period pursuant to 33 U.S.C. §1365(c) and 40 C.F.R. § 135.5;

**WHEREAS**, Plaintiff and Defendant have agreed that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings and without any admission of liability on the part of the Defendant; and

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

///

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

## I.   GENERAL OBJECTIVES

1. The objectives of this Consent Decree are:

    a. To ensure that Buellflat continues to improve its efforts to comply with the CWA;

    b. To ensure that Buellflat continues to use, implement, and improve ways, means, and methods to prevent or reduce the discharge of pollutants in storm water runoff from the Facility to the Santa Ynez River; and

    c. To further the goals and objectives of the CWA.

2. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

"Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

"Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

"Design Storm" means the volume of runoff produced from an 85th percentile 24-hour storm event, as determined from local, historical rainfall records.

"Dry Season" means the five-month period beginning May 1st of any given year and ending September 30th of the same year.

"Effective Date" means the effective date of this Consent Decree, which shall be the date the Clerk of the Court gives notice of entry of the Court's order

1   hereon.

2   "Wet Season" means the seven-month period beginning October 1st of any

3   given year and ending April 30th of the following year.

4   **II.   JURISDICTION AND VENUE**

5   3. This Court has jurisdiction over the subject matter of the claims asserted by

6   Plaintiff pursuant to CWA section 505(a), 33 U.S.C. § 1365(a), 28 U.S.C. §§ 1331,

7   1355, and 1367. Venue is proper in this judicial district pursuant to section CWA

8   §§ 309(b), 505(c), 33 U.S.C. §§ 1319(b), 1365(c), and 28 U.S.C. §§ 1391(b) and

9   (c). The parties waive any and all objections that they may have to the Court's

10   jurisdiction to enter and enforce this Consent Decree.

11   4. Plaintiff has standing to bring this action.

12   5. (Intentionally omitted).

13   **III.   EFFECT OF CONSENT DECREE/RELEASE OF CLAIMS**

14   6. Plaintiff does not, by its consent to this Consent Decree, warrant or aver in

15   any manner that Buellflat's compliance with this Consent Decree will constitute or

16   result in compliance with any federal or state law or regulation.

17   7. This Consent Decree is neither a permit nor a modification of existing

18   permits under any federal, state, or local law and in no way relieves Buellflat of its

19   responsibilities to comply with all applicable federal, state and local laws and

20   regulations.

21   8. Compliance with this Consent Decree, including all monetary payments due

22   under this Consent Decree (including but not limited to the payment of any

23   stipulated payments) and the completion of all remedial measures required

24   pursuant to this Consent Decree resolves all of Plaintiff's claims for the violations

25   alleged or that could have been alleged against Buellflat in this Action.

26   9. Plaintiff's Release: Upon the Effective Date of this Consent Decree,

27   Plaintiff, on its own behalf and on behalf of any and all of its current and former

28   parents, subsidiaries and affiliates and each of their officers, directors, shareholders

1  and members, and each of their successors and assigns, agents, attorneys and other

2  representatives ("Plaintiff Releasors"), hereby release Buellflat, and any and all of

3  its current and former parents, subsidiaries and affiliates, officers, directors,

4  shareholders, employees, agents, attorneys and other representatives, successors

5  and assigns (collectively "Releasees") from any and all CWA violations, known or

6  unknown, alleged in or that could have been alleged in the Complaint up to and

7  including the Effective Date of this Consent Decree. Except for claims for

8  Buellflat's failure to comply with this Consent Decree, Plaintiff Releasors further

9  release Releasees from any and all claims of every kind and nature pertaining to

10 alleged violations of the CWA that may occur due to discharges of storm water

11 from the Facility between the Effective Date and the termination of this Consent

12 Decree.

13      The foregoing release includes claims, both known and unknown. Plaintiff

14 Releasors **hereby waive** the provisions of Cal. Civil Code section 1542, which

15 provides as follows:

16      "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS

17      WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO

18      EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING

19      THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST

20      HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT

21      WITH THE DEBTOR."

22      10.      Defendant's Release: Upon the Effective Date of this Consent Decree,

23 Defendant, on its own behalf and on behalf of its current and former officers,

24 directors, employees, members, and each of their successors and assigns, and their

25 agents, attorneys, and other representatives releases Plaintiff (and its current and

26 former officers, directors, employees, members, parents, subsidiaries, and

27 affiliates, and each of their successors and assigns, and its agents, attorneys, and

28 other representatives) from, and waives all claims which arise from or pertain to

1  this action, including all claims for fees (including fees of attorneys, experts, and
2  others), costs, expenses or any other sum incurred or claimed or which could have
3  been claimed for matters associated with or related to Plaintiff's Notice Letter and
4  Complaint up to the Effective Date.

## IV. APPLICABILITY

6  11. The provisions of this Consent Decree apply to and bind Plaintiff and
7  Buellflat (collectively, "Parties"), including any successors or assigns. The Parties
8  certify that their undersigned representatives are fully authorized to enter into this
9  Consent Decree, to execute it on behalf of the Parties, and to legally bind the
10  Parties to its terms.

11  12. The Parties agree to be bound by this Consent Decree and not to
12  contest its validity in any subsequent proceeding to implement or enforce its terms.
13  By entering into this Consent Decree, Buellflat does not admit liability for any
14  purpose as to any allegation or matter contained in or arising out of the Action.
15  Nothing in this Consent Decree shall constitute an admission of any fact or a
16  waiver of any right or defense unless specifically set forth herein.

17  13. No change in ownership or corporate or other legal status of Buellflat
18  or any transfer of Buellflat's assets or liabilities shall in any way alter the
19  responsibilities of Buellflat or any of its successors or assigns thereof, under this
20  Consent Decree. In any action to enforce this Consent Decree, Buellflat shall not
21  raise as a defense the failure by any of its agents, servants, contractors, employees,
22  successors or assigns to take actions necessary to comply with this Consent
23  Decree, unless such actions were prevented by a force majeure.

24  14. Except as otherwise provided in this Consent Decree, the sale or
25  transfer of ownership or operation of any portion of the Facility real property does
26  not relieve Buellflat of its obligations under this Consent Decree. Not later than
27  thirty (30) days prior to sale or transfer of ownership or operation of any portion of
28  the Facility real property prior to the termination of the Consent Decree, Buellflat

1  shall give written notice of this Consent Decree to each purchaser or successor in
2  interest. Buellflat also shall give written notification to Plaintiff, in accordance
3  with paragraph XXII (NOTICES AND SUBMISSIONS), of the anticipated sale or
4  transfer of ownership or operation of any portion of the Facility real property prior
5  to said termination at least thirty (30) days prior to the scheduled date of such sale
6  or transfer and may seek from the Court a modification of this Decree that would
7  transfer responsibility for compliance with some or all of these provisions to its
8  successor. The Court shall grant such request if the successor acknowledges that it
9  is ready, willing and able to fully implement obligations the successor would
10  assume under this Consent Decree.

## V. REMEDIAL MEASURES

### A. Storm Water Pollution Control Measures

15.     In addition to maintaining the current BMPs at the Facility, Buellflat
shall develop and implement the BMPs identified herein, as well as any other
BMPs necessary to comply with the provisions of this Consent Decree and the
Storm Water Permit. Specifically, Buellflat shall develop and implement BMPs to
prevent and/or to reduce contamination in storm water discharged from the Facility
to the Santa Ynez River sufficient to reduce the levels of pollutants in such storm
water discharges below the Tier Two Levels in Table 1 attached as Exhibit 1 to this
Consent Decree and to make reasonable progress towards reducing the levels of
pollutants in such storm water discharges below the Tier One Levels in Table 1.

### B. Reduction of Pollutants in Discharges

16.     Action Plan for Table 1 Exceedances: If any storm water sample contains
a level of contaminant discharged from the Facility to the Santa Ynez River above
any of the Tier Two Levels or the Tier One Levels for copper or lead as set forth in
Table 1, Buellflat shall submit a plan for reducing and/or eliminating such discharge
of pollutants ("Action Plan"). In any year that an Action Plan is required, Buellflat
shall submit it to the Plaintiff by July 1 following the Wet Season for which

1   exceedance was reported.

2       17.   <u>Action Plan Requirements</u>: Each Action Plan submitted shall include at a
3   minimum: (1) the identification of the contaminant(s) discharged from the Facility to
4   the Santa Ynez River in excess of the Tier One or Two Level(s), (2) identification of
5   the source of each contaminant exceedance, (3) the consideration of additional
6   BMPs, including treating storm water prior to discharge from the Facility to the
7   Santa Ynez River, that will be implemented in an effort to achieve compliance with
8   the Tier One or Two Levels, and (4) time schedules for implementation of the
9   proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs
10  are implemented as soon as possible, but in no case later than October 1 (prior to the
11  next Wet Season).  Where applicable:

12      a.    <u>Hydraulic Controls</u>:  installation of additional berms or equivalent
13              structural controls (if necessary to reduce or prevent storm water from
14              flowing into or, other than through the engineered storm water
15              conveyance system or storm water retention or treatment facilities).

16      b.    <u>Detention</u>: Additional on-site retention or infiltration of storm water to
17              minimize storm water discharges (overall or from specific areas) from
18              the Facility to the Santa Ynez River or to detain storm water runoff
19              for sufficient detention time so as to reduce pollutants in such
20              discharge.

21      c.    <u>Visual "Track Off" To Public Streets</u>:  additional BMPs if necessary,
22              to reduce or prevent visual "track off" of material from the Facilities
23              onto public streets.

24      d.    <u>Evaluation of BMPs</u>:  replacing, rehabilitating, or eliminating existing
25              BMPs, taking into account the age of the BMPs involved or
26              employed, the engineering aspect of the application of various BMPs,
27              and any adverse environmental impact of the BMPs.

28

1       e.      Such other additional BMPs as Buellflat deems appropriate for

2               evaluation.

3       18.     Action Plan Review: Plaintiff shall have thirty (30) days upon receipt of

4 Buellflat's Action Plan to provide Buellflat with comments. If Buellflat does not

5 receive any such comments within the 30 day period, the Action Plan shall be

6 deemed approved as submitted.  Within fifteen (15) days of Buellflat's receipt of

7 Plaintiff's comments on the Action Plan, Buellflat shall accept and incorporate

8 Plaintiff's comments of recommended additional BMPs into the Action Plan, or

9 shall provide Plaintiff with a written explanation if Buellflat refuses to develop

10 and/or implement any of Plaintiff's recommended additional BMPs. Disputes

11 regarding the adequacy of a particular BMP shall not impact the schedule for

12 implementing any other BMP set forth in the Action Plan. Any disputes as to the

13 adequacy of the Action Plan shall be resolved pursuant to the Dispute Resolution

14 provisions of Part XI (DISPUTE RESOLUTION).

15      19.     Buellflat shall contact Plaintiff to request an extension of the deadline, if

16 necessary, to implement any BMPs requiring agency approval. Plaintiff's consent to

17 Buellflat's requested extension shall not be unreasonably withheld.

18      20.     When an Action Plan is completed and approved, or deemed approved,

19 by Plaintiff or finalized pursuant to Dispute Resolution, Buellflat shall revise its

20 SWPPP and Monitoring Implementation Plan ("MIP"), as applicable, within thirty

21 (30) days to reflect the changes required by the Action Plan. Buellflat shall notify

22 Plaintiff in writing when the Action Plan has been completely implemented.

23 Defendant shall implement any Action Plan approved pursuant to this paragraph as a

24 requirement of the Consent Decree.

25  **C.  Site Mapping**

26      21.     Site Mapping: Within sixty (60) days of the Effective Date, Buellflat

27 shall update the Site Maps for its SWPPP. The Site Maps shall clearly identify the

28 property boundaries, ground type (pervious or impervious) on all portions of the

1  Facility; berms, dikes, walls and all other structures controlling the flow of surface
2  water, all components of the Facility storm water conveyance system, including but
3  not limited to all storm water pipes, drop inlets, any storm water storage or treatment
4  infrastructure (as well is the capacity of such infrastructure) and all other physical
5  structures or items relevant under this Consent Decree. The Site Map shall further
6  indicate the direction and pattern of storm water flows at and off the Facility.

7  　　　22.　Designated Discharge Points:　Within sixty (60) days of the Effective
8  Date, to the extent not already implemented, Buellflat shall identify on the Site Maps
9  every location at which storm water and non-storm water is known to be discharged
10  or which may potentially be discharged from the Facility to the Santa Ynez River,
11  including all driveways ("Designated Discharge Points or Designated Discharge
12  Locations"). Each Designated Discharge Point or Discharge Location shall be
13  numbered and clearly labeled on the Site Map(s).

14  　　　23.　Designation of Storage Areas:　The outdoor storage areas at the Facility
15  where materials used at the Facility are stored ("Material Storage Areas") shall be
16  designated on the Facility's Site Map.

17  　　　24.　Pollutant Generating Activities:　The SWPPP for the Facility shall fully
18  describe all industrial activities that generate dust, particulates or other pollutants
19  that may be deposited within the Facility's boundaries and identify their discharge
20  locations and the characteristics of such dust, particulate and other pollutants; and a
21  description of the primary areas of the Facility where dust, particulate and other
22  pollutants would settle.

23  　　　25.　Designation of Sampling Location(s):　The Site Map shall set identify
24  precisely where storm water samples are to be collected.

25  **VI.  SAMPLING, MONITORING, INSPECTION & REPORTING**

26  　　**A.  Sampling Program**

27  　　　26.　Buellflat shall collect storm water discharge samples from each
28  Discharge Point at the Facility according to the following sampling schedule:

a.   If Buellflat continues to discharge storm water at Sample Point 1, it shall sample that discharge at the bottom of the former river access road where the discharge enters the river bed.

b.   During the first and second year of this Consent Decree, and except as set forth below in this paragraph, Buellflat shall collect five storm water samples per year from each Discharge Point at the Facility. If three consecutive samples from each of the Discharge Points results in pollutant levels below the Tier One levels set forth in Table 1 for any parameter sampled, Buellflat need not conduct additional sampling for such parameter if the Storm Water Permit does not otherwise require Buellflat to sample for that parameter.

c.   During the third year of this Consent Decree, Buellflat shall collect four storm water samples from each Discharge Point at the Facility.

d.   Buellflat shall analyze each storm water sample collected for each of the parameters listed on the Table 1. Should operations in the Industrial Activity Areas change substantially, Buellflat shall conduct sampling for any additional toxic priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in Buellflat's storm water discharges as a result of the changed operations.

e.   Where Buellflat discharges storm water into a storm drain inlet or catch basin, Buellflat may choose to collect a sample below any insert or treatment system. If Buellflat chooses not to collect a post-filtration or post-treatment sample, the quality of storm water samples entering a storm drain inlet or catch basin containing a fabric insert shall be considered the same as a sample collected below the insert.

27.   Sampling events shall occur at least 24 hours apart and be preceded by at least 48 hours without storm water discharges.

28.   If Buellflat does not collect the required number of samples from the

1 designated sampling locations due to lack of discharge, Buellflat shall explain in
2 their Annual Report or any Action Plan required by this Consent Decree why rainfall
3 was insufficient for Buellflat to obtain the requisite samples.

4    29.   Buellflat shall have all storm water samples collected pursuant to this
5 Consent Decree delivered to a California state certified environmental laboratory for
6 analysis within the time needed for analysis within laboratory method allowable
7 hold times, with the exception of pH.  Buellflat shall direct the laboratory to conduct
8 analysis sufficient to detect individual constituents at or below the Tier One Levels
9 set forth in the attached Table 1.

10    30.  Buellflat shall provide to Plaintiff complete results from Buellflat's sampling
11 and analysis of storm water discharges to Plaintiff within fourteen (14) days of
12 receipt of the laboratory report from each sampling event. Each time Buellflat
13 receives sampling results, Buellflat shall provide Plaintiff with a chart in digital or
14 hardcopy form that summarizes the results of all the samples and includes the Tier
15 One and Tier Two Levels for comparison. The summary chart shall consistently
16 present the sample summaries in micrograms per liter for all of the parameters for
17 which concentration values are provided.

18    31    No storm water discharge samples shall be required under this paragraph VI
19 unless Buellflat is discharging to the Santa Ynez River.

20    **B.   Visual Observations**

21    32.   <u>Wet Weather Visual Observations</u>: During the life of this Consent
22 Decree, Buellflat shall conduct visual observations at any and all Designated
23 Discharge Locations during every rain event that produces a discharge from the
24 Facility to the Santa Ynez River. In addition, Buellflat shall observe all potential
25 discharge locations on the perimeter of the Facility to determine if discharge of
26 storm water is occurring.

27    33.   During such wet weather visual observations, appropriately trained
28 Buellflat employees shall monitor for the presence of discolored or turbid storm

1   water discharges. Buellflat shall take representative photographs of storm water
2   discharges from the Facility to the Santa Ynez River during all observed rain events,
3   including photographs of any discolored or turbid storm water discharges. Buellflat
4   shall include these photographs in annual reports provided to Plaintiff in accordance
5   with paragraph 38.

6       34.    Dry Weather Visual Observations: At least once per month during the
7   Wet Season, appropriately trained Buellflat employees shall conduct dry weather
8   visual inspections of the Facility. Such inspections shall include driveways, outdoor
9   storage areas, and all Industrial Activity Areas.  Any and all Designated Discharge
10  Locations shall also be inspected for accumulation of dust, sediment, sand, grit, oily
11  substances, oily sheens upon any standing water, and other materials associated with
12  operations at the Facility. Such inspections shall further include observations of all
13  storm water BMPs at the Facility to ensure that operational BMPs are being
14  implemented, structural BMPs are in good condition or working order, and that
15  BMPs have been effective in producing clean conditions at the Facility.

16      35.    During such dry weather visual inspections, appropriately trained
17  employees shall photo document their visual observations of the status of BMPs.
18  Buellflat shall include these photographs in annual reports provided to Plaintiff in
19  accordance with paragraph 38.

20  **C.  Compliance Monitoring**

21      36.    Site Inspections: Plaintiff and its representatives may conduct one site
22  inspection per year at the Buellflat Facility during the life of this Consent Decree.
23  The site inspections shall occur during normal business hours and Plaintiff shall
24  provide Buellflat with at least forty-eight (48) hours advance notice.

25      37.    During the site inspections, Plaintiff and/or its representatives shall be
26  allowed access to the Facility's SWPPP, MIP, and other storm water monitoring
27  records, reports, and sampling data for the Buellflat Facility. During the site
28  inspections, Plaintiff and/or its representatives may collect samples of any

1   discharges from the Facility to the Santa Ynez River. A certified California
2   laboratory shall analyze storm water samples collected by Plaintiff and copies of the
3   lab reports shall be provided to Buellflat within five (5) business days of receipt. At
4   the request of Buellflat, the samples shall be split and one half provided to Buellflat
5   so as to allow Buellflat to have their own certified California laboratory analyze the
6   samples, in which case Buellflat shall provide the laboratory results to Plaintiff
7   within five (5) business days of receipt.

8   **D.   Reporting**

9        38.   During the life of this Consent Decree, Buellflat shall provide Plaintiff
10  with a copy of all documents pertaining to the General Permit submitted to or
11  received from the Regional Board or the State Board concerning the Facility,
12  including all documents and reports submitted to the Regional Board as required by
13  the General Permit. Documents and reports sent by Buellflat to the Regional Board
14  or State Board shall be electronically mailed to Plaintiff contemporaneously with
15  submission to the respective agency. Documents received by Buellflat from the
16  Regional Board and/or the State Board shall be electronically mailed to Plaintiff
17  within three (3) business days of receipt.  No documents available in "SMARTS"
18  need be submitted.

19       39.   **End of Season Summary**. For each year that this consent decree is in
20  effect, Buellflat shall provide Plaintiff with a summary table of any and all storm
21  water sample test results for the Facility, photographs documenting visual
22  inspections at the Facility available to Buellflat, and cleaning, maintenance, and
23  inspection logs prepared pursuant to paragraph 42. In the event that no Action Plan
24  is required in any given year the consent decree is in effect, the end of season
25  summary shall also include: (1) an explanation of whether Buellflat has
26  implemented or will implement new BMPs not already discussed in a prior
27  summary report or Action Plan, and (2) an evaluation of the effectiveness of any
28  new BMPs implemented in the prior year, and (3) documentation as to any other

measures taken by Buellflat to comply with the Decree or Stormwater General Permit.

## VII. EMPLOYEE TRAINING

40.   Within thirty (30) days of the Effective Date, Buellflat shall develop and implement a training program for non-office personnel, including any training materials needed for effective implementation of the training program, to ensure (1) that there are a sufficient number of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree, and (2) that these employees are properly trained to perform the required compliance activities ("Training Program"). At a minimum the Training Program shall familiarize all such employees at the Facility with the appropriate requirements of the Storm Water Permit and this Consent Decree.

41.   The Training Program shall require specific training to include at least the following:

    a. <u>Non-Storm Water Discharge Training</u>: Buellflat shall train all such employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, and how to detect them and prevent them;

    b. <u>BMP Training</u>: Buellflat shall train all such employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water from the Facility to the Santa Ynez River, and to ensure the proper management of storm water at the Facility;

    c. <u>Sampling Training</u>: Buellflat shall designate an adequate number of employees necessary to collect storm water samples from each discharge location if and as required by this Consent Decree and/or the Storm Water Permit. The training shall include the proper sampling protocols,

1          including chain of custody requirements, to ensure storm water samples

2          are properly collected, stored, and submitted to a certified laboratory;

3      d. <u>Visual Observation Training</u>: Buellflat shall provide training to all

4          individuals performing visual observations at the Facility pursuant to this

5          Consent Decree and/or the Storm Water Permit.

6     42.    Training shall be provided on an annual basis, or as otherwise required to

7 ensure compliance with the terms of this Consent Decree, by a private consultant or

8 a representative of Buellflat who is familiar with the requirements of this Consent

9 Decree and the Storm Water Permit. The training shall be repeated as necessary to

10 ensure that all such employees are familiar with the requirements of this Consent

11 Decree, the Storm Water Permit, and the Facility's SWPPP and MIP. All new staff

12 will receive this training before assuming responsibilities for implementing the

13 SWPPP and/or MIP.

14    43.    Buellflat shall maintain training records to document compliance with

15 this section, and shall provide Plaintiff with a copy of these records within fourteen

16 (14) days of receipt of a written request. The Training Program shall be specified in

17 the SWPPP.

18 **VIII.**    **STORM WATER POLLUTION PREVENTION AND**

19 **MONITORING AND REPORTING PLAN**

20    44.    Within forty-five (45) days after the Effective Date of this Consent

21 Decree, Buellflat shall revise its SWPPP and MIP to:

22      a. Incorporate the requirements of the Storm Water Permit, and this

23          Consent Decree

24      b. Identify the individuals responsible for compliance with the Storm Water

25          Permit and this Consent Decree including specifying which individual is

26          responsible for what area of compliance (*e.g.*, John Doe, collecting

27          samples);

28      c. Describe all BMPs and how they will be operated and/or maintained;

   d. Denote all actions taken to control the deposition of dust, particulate matter and other pollutants at the Facility;

   e. Describe where and when any storm samples are to be collected and explain why the sample points are representative of off-site discharge from the Facility to the Santa Ynez River, and include a checklist that must be used by trained Facility personnel when conducting the storm water sampling required under the Storm Water Permit and/or under this Consent Decree;

   f. Describe where and when visual inspections of the Facility are to be performed and include a visual inspection checklist that must be used by trained Facility personnel when conducting the visual observations required under the Storm Water Permit and/or under this Consent Decree; and

   g. Describe the type, direction, and volume of vehicle traffic at the Facility.

45. <u>Commenting on the SWPPP and MIP Revisions</u>: Buellflat shall submit the revised SWPPP and MIP to Plaintiff for review and comment as soon as it is completed but in any event no later than forty-five (45) days after the Effective Date. Plaintiff shall provide comments, if any, to Buellflat within thirty (30) days of receipt of the SWPPP and MIP. If Buellflat does not receive any such comments within this 30 day period, the SWPPP and MIP shall be deemed approved as submitted. Buellflat shall incorporate Plaintiff's comments into the SWPPP and MIP or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving Plaintiff's comments. Any disputes over the adequacy of the revised SWPPP and MIP shall be resolved pursuant to the Dispute Resolution provisions of Part XI (DISPUTE RESOLUTION).

46. <u>Additional Revisions to SWPPP and MIP</u>: Buellflat shall revise the SWPPP and MIP if there are any relevant changes in the Facility's operations, including but not limited to changes to storm water discharge point(s) or changes or

additions to the BMPs at the Facility resulting from an Action Plan. Buellflat shall submit any revised SWPPP and MIP to Plaintiff for review and comment within five (5) days of completion. Plaintiff shall provide comments, if any, to Buellflat within thirty (30) days of receipt of any revised SWPPP and MIP. Buellflat shall incorporate Plaintiff's comments into any revised SWPPP and MIP, or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving comments. In the event no such comments are received, Buellflat's submittal shall be deemed approved. Any disputes as to the adequacy of the SWPPP and MIP shall be resolved pursuant to the Dispute Resolution provisions of Part XI (DISPUTE RESOLUTION).

## IX. MITIGATION, FEES, AND COSTS

47. <u>Supplemental Environmental Project Funding</u>:  As mitigation of the violations alleged in Plaintiff's Notice and Complaint, Buellflat shall pay the sum of Sixteen Thousand Two Hundred Fifty Dollars ($16,250) to the Rose Foundation for Communities and the Environment for projects relating to the reduction, prevention or mitigation of, or research on, the effects of discharges of pollutants to area receiving waters or projects designed to advance environmental restoration within the Santa Ynez River watershed. Within 30 days of the Effective Date, Buellflat shall tender this payment to the Rose Foundation for Communities and the Environment.

48. <u>Reimbursement of Fees and Costs</u>:  Buellflat shall reimburse Plaintiff in the amount of $45,000 to help defray Plaintiff's investigation fees and costs, expert fees and costs, reasonable attorneys' fees, and all other costs incurred as a result of investigating the activities at the Facility, bringing these matters to Buellflat's attention, and negotiating a resolution of this action in the public interest. Such payment shall be made in two installments of $22,500 each.  The first shall be paid within 10 days after the Effective Date; and the balance shall be within six months thereafter.

49.   <u>Compliance Monitoring Funds</u>:   Buellflat shall reimburse ERF Five Thousand Dollars ($5,000) per year beginning 2016 for each year the Consent Decree is in effect for costs and fees associated with monitoring Buellflat's compliance with this Consent Decree. Monitoring activities include the authorized site inspection, review of water quality sampling reports, review of Action Plans and other documents submitted pursuant to this Decree, discussion or written communication with representatives of Buellflat concerning potential changes to compliance requirements, water quality sampling, informal dispute resolution, and other actions necessary to monitor and ensure Buellflat's compliance with this Decree. The compliance monitoring fund payment shall be made in installments of Five Thousand Dollars ($5,000) each and shall be made payable to Environmental Advocates Attorney Client Trust Account. The first installment (for 2016) shall be paid within fifteen (15) days after the Effective Date, and the remaining installments shall be paid on or before January 1st of each of the following years, if any, that the Consent Decree is in effect.

## X.   STIPULATED PAYMENTS

50.   For each wet season that the Consent Decree is in effect, Buellflat shall contribute to an additional Supplemental Environmental Project if any storm water discharges from the Facility to the Santa Ynez River exceed Tier Two pollutant levels four or more times during that wet season. Any storm water samples that Buellflat takes internally within the Facility (*i.e.*, storm water that has been tested prior to treatment or discharge for the purpose of identifying site specific areas of pollutant generation as part of designing remedial measures for the Facility) shall not be subject to the payment requirement of this paragraph. Buellflat shall pay the total sum of Two Thousand Dollars ($2,000) to the Rose Foundation for Communities and the Environment by July 1st following the Wet Season that the exceedances occurred, and the additional Supplemental Environmental Project funding shall be used for projects relating to the reduction, prevention or mitigation of, or research

on, the effects of discharges of pollutants to area receiving waters or projects designed to advance environmental restoration within the Santa Ynez River watershed.

51.   In the event Buellflat fails to submit to Plaintiff any document, report or other communication required under paragraphs 16, 30, 37, 38, or 45 of this Agreement within five (5) days of its due date, Buellflat shall pay a per day payment of Three Hundred Dollars ($300) commencing on the eleventh (11th) day after the required submissions' due date.

52.   In the event Buellflat fails to complete a measure of specific performance required by paragraphs 21-34 by the dates required or fails to implement the BMPs specified in any future Action Plans by the deadlines established in those Action Plans pursuant to paragraphs 17-20, Buellflat shall incur a late payment of Three Hundred Dollar ($300) per day commencing on the eleventh (11th) day after the date by which the measure was to be completed or implemented.

53.   If Buellflat fails to submit any payments required under paragraphs 47-49 of this Consent Decree within five (5) days of its due date, Buellflat shall pay Three Hundred Dollars ($300) per day until it tenders such overdue payments, commencing on the sixth (6th) day after the payment due date.

54.   Any stipulated payments pursuant to this Section X shall be paid to the Rose Foundation for Communities and the Environment. Stipulated payments shall be used for projects relating to the reduction, prevention or mitigation of, or research on, the effects of discharges of pollutants within the Santa Ynez River watershed or projects designed to advance environmental restoration within the Santa Ynez River watershed. Buellflat shall send Plaintiff notice of any such stipulated payments within seven (7) days of tendering such payments.  If a payment is subject to a Dispute Resolution Process under paragraph XI, it shall not be due until the resolution of that process. If it is determined through the Dispute Resolution Process that the payment is due, it shall be paid within fourteen (14) days of such

1  determination.  Stipulated payments shall not continue to accrue, but shall be tolled
2  during the pendency of the Dispute Resolution Process and said fourteen (14) day
3  period.

4  **XI. DISPUTE  RESOLUTION  AND  ENFORCEMENT  OF  CONSENT**
5  **DECREE**

6  55.  <u>Dispute Resolution Process</u>: If a dispute under this Consent Decree
7  arises, or either Party believes that a breach of this Consent Decree has occurred, the
8  Parties shall schedule a meet and confer within ten (10) calendar days of receiving
9  written notification from the other Party of a request for a meeting to determine
10  whether a breach has occurred, and in the case of an alleged violation, whether a
11  violation has occurred and to develop a mutually agreed upon plan, including
12  implementation dates, to resolve the violation. If the Parties fail to meet and confer
13  or the meet and confer does not resolve the issue, after at least seven days have
14  passed after the meet and confer occurred or should have occurred, either Party shall
15  be entitled to all rights and remedies under the law, including bringing a motion
16  before the District Court of California, Central District, which shall retain
17  jurisdiction over the Action for the limited purposes of enforcement of the terms of
18  this Consent Decree. The Parties agree not to object to a reasonable expedited
19  hearing schedule on any Dispute Resolution motion if one of the Parties requests
20  one.

21  56.  <u>Burden of Proof</u>: In the event of any disagreement or dispute between
22  Plaintiff and Buellflat over the necessity or appropriateness of implementing any
23  particular BMP or set of BMPs, including in any formal or informal proceeding
24  brought to enforce the terms of this Consent Decree, Buellflat shall bear the burden
25  of demonstrating that its BMPs, collectively, constitute BAT/BCT for the Facility, or
26  that they are in compliance with the terms of this Consent Decree. Plaintiff shall not
27  be required to prove that Buellflat's BMPs do not constitute BAT/BCT.

28  57.  <u>Litigation Costs and Fees</u>: Litigation costs and fees incurred in

1  conducting meet and confer or otherwise addressing and/or resolving any dispute,

2  including an alleged breach of this Consent Decree, shall be awarded to the

3  prevailing party in accord with the standard established by Section 505 of the Clean

4  Water Act, 33 U.S.C. §1365 and case law interpreting that standard.

5  **XII. NOTICES AND SUBMISSIONS**

6      58.    Except as otherwise expressly provided in this Consent Decree, whenever

7  under the terms of this Consent Decree notice is required to be given or a report or

8  other document is required to be forwarded by one Party to another, it shall, to the

9  extent feasible be sent to the following individuals as electronic computer files at the

10 e-mail addresses specified below. If a given document cannot be e-mailed, it shall be

11 mailed by U.S. Mail to the following addresses. Any change in the individuals

12 designated by either Party must be made in writing to the other Parties.

13 As to Plaintiff:

14 Fredric Evenson
   ECOLOGY LAW CENTER
15 P.O. Box 1000
   Santa Cruz, CA 95061
16 Telephone: (831) 454-8216
   Email: evenson@ecologylaw.com
17

18 Christopher A. Sproul
   Environmental Advocates
19 5135 Anza Street
   San Francisco, California  94121
20 Email:  csproul@enviroadvocates.com

21 As to the Defendant:

22 Buellflat Rock Company, Inc.
   1214 Mission Drive
23 Solvang, CA  93463
   Attn:  James Hancock
24 jhancock7@verizon.net

25 Hollister & Brace
   P.O. Box 206
26 Los Olivos, CA  93441
   Attn:  Steven Evans Kirby
27 sekirby@hbsb.com

28 / / /

## XIII.   PAYMENTS

59.    All payments to Plaintiff (other than payments of Supplemental Environmental Project funding pursuant to paragraph 47 and Stipulated Payments pursuant to Section X) shall be made by check made payable to Environmental Advocates Attorney Client Trust Account. Payments shall be sent via certified mail, return receipt requested, to the following address:

> Christopher A. Sproul
> Environmental Advocates
> 5135 Anza Street
> San Francisco, California 94121

60.    All Supplement Environmental Project funding pursuant to paragraph 47 and Stipulated Payments pursuant to Section X shall be made by check payable to the Rose Foundation for Communities and the Environment. Such payments shall be sent via certified mail, return receipt requested, to the following address (with notice to the Plaintiff that such payments have been sent):

> Tim Little
> Rose Foundation for Communities and the Environment
> 1970 Broadway, Suite 600
> Oakland, California 94612-2218

## XIV.   MISCELLANEOUS PROVISIONS

61.    **Execution in Counterparts:** The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

62.    **Severability**: In the event that any of the provisions of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

63.    **Construction**: The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.

64.    **Integrated Consent Decree**: All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the

1  subject matter of this Consent Decree are contained herein.

2      65.  **Facsimile Signatures:** Signatures of the Parties transmitted by facsimile

3  shall be deemed binding.

4      66.  **Force Majeure**: No Party shall be considered to be in default in the

5  performance of any of its obligations when a failure to perform is due to a "Force

6  Majeure." A Force Majeure event is any act of God, war, fire, earthquake, flood,

7  natural catastrophe, and restraint by court order or public authority, or any other

8  cause beyond the reasonable control of a party. A Force Majeure event does not

9  include normal inclement weather, such as anything less than or equal to a 100

10  year/24 hour storm event or inability to pay. Any Party seeking to rely upon this

11  paragraph shall have the burden of establishing that it could not reasonably have

12  been expected to avoid, and which by exercise of due diligence has been unable to

13  overcome, the Force Majeure. The Parties shall exercise due diligence to resolve and

14  remove any Force Majeure event.

15      67.  The parties hereto enter into this Consent Decree, Order and Final

16  Judgment and submit it to the Court for its approval and entry as a final judgment.

17  **XV. EFFECTIVE AND TERMINATION DATES**

18      68.  Within three (3) days of the final signature of the Parties, Plaintiff shall

19  submit this executed Consent Decree to EPA and DOJ for a 45-day review and

20  comment period pursuant to CWA section 505(c)(3) and 40 C.F.R. § 135.5. The

21  Court shall not enter its judgment on consent until the expiration of this review and

22  comment period. If EPA or DOJ requests or suggests revisions to this Consent

23  Decree or objects to entry of this Consent Decree in the form presented, the Parties

24  shall within ten (10) days meet and confer on whether to revise this Consent Decree

25  in accord with the requested or suggested revisions provided by EPA or DOJ and/or

26  otherwise to accommodate EPA or DOJ's objections. If the Parties do not mutually

27  agree to any such revisions or modifications, the Parties shall so notify the Court and

28  request entry of the Consent Decree in the form drafted. If the Court declines entry

1 of this Consent Decree in the form presented, the Parties will attempt in good faith to
2 agree to revisions of this Consent Decree necessary so that it is acceptable to the
3 Court.

4     69.   The Effective Date of this Consent Decree shall be the first of the
5 following to occur:  i) last day for EPA and DOJ to comment on the Consent Decree,
6 i.e., the 45th day following these agencies' receipt of the Consent Decree, ii) the date
7 on which these agencies provide notice that they require no further review, or iii) the
8 Court's entry of this Consent Decree.

9     70.   Subject to earlier termination as provided in paragraph 70 below, this
10 Consent Decree shall terminate three (3) years from the Effective Date, provided that
11 Buellflat has made all monetary payments owed under the Consent Decree and there
12 is no pending Dispute Resolution proceeding pursuant to the provisions of Part XI
13 (DISPUTE RESOLUTION). If Buellflat has not made all monetary payments owed
14 under the Consent Decree or if there is a pending Dispute Resolution proceeding, the
15 Consent Decree shall be extended until Buellflat has made all monetary payments
16 owed under the Consent Decree and all pending Dispute Resolution proceedings
17 have been resolved.

18     71.   Alternatively, after July 31, 2016, this Consent Decree shall terminate if
19 and when all the following conditions are met:

20         a.   Buellflat has made all monetary payments owed under the Consent
21             Decree;

22         b.   There is no pending Dispute Resolution proceeding; **and**

23         c.   There have been no discharges from the Facility to the Santa Ynez
24             River during four consecutive storm events occurring after
25             November 1, 2015.

26     72.   Buellflat shall initiate termination by submitting certification to Plaintiff
27 that it has satisfied the conditions of termination set forth in this Paragraph XV. The
28 Consent Decree shall automatically terminate thirty (30) days from the Plaintiff's

1   receipt of this notice, unless Plaintiff provides written notice to Buellflat within
2   these thirty (30) days that Plaintiff objects to the certification. If Plaintiff disagrees
3   with Buellflat's certification, then the matter shall be subject to the Dispute
4   Resolution provisions of Part XI (DISPUTE RESOLUTION).

5

6   IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of
7   the date first set forth above.

8
9   **IT IS SO ORDERED:**

10  Date:   _April 18, 2016_                     _Christina A. Snyder_
11  Honorable Christina A. Snyder
    UNITED STATES DISTRICT COURT JUDGE
12  CENTRAL DISTRICT OF CALIFORNIA

13

14

15  APPROVED AS TO FORM
16

17
                                          ENVIRONMENTAL ADVOCATES
18

19
20  Dated: _2/14_____, 2016          By: _____
                                          Print Name: _Fredric Evenson_
21                                        Attorney for Plaintiff
22

23                                        HOLLISTER & BRACE
24  Dated: _February 11_, 2016       By: _____
25                                        Steven Evans Kirby
                                          Attorney for Defendant
26

27          (SIGNATURES CONTINUED ON NEXT PAGE)
28

HOLLISTER & BRACE

Dated: _____, 2015

By: _____
Print Name: _____
Attorney for Defendant

APPROVED AS TO CONTENT:

ECOLOGICAL RIGHTS FOUNDATION

Dated: _FEB. 15_, ~~2015~~ 2016

By: _____
James Lamport

Its: _EXECUTIVE DIRECTOR_

BUELLFLAT ROCK COMPANY, INC.

Dated: _____, 2015

By: _____
Print Name: _____
Its: _____

1   APPROVED AS TO CONTENT

2

3                        ECOLOGICAL RIGHTS FOUNDATION

4

5   Dated: _____, 2016     By: _____

6                                  James Lamport

7                        Its: _____

8

9                        BUELLFLAT ROCK COMPANY, INC.

10

11   Dated: _2-11-_ , 2016     By: _____

12                              James Hancock
                                Its: Plant Manager

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Table 1. Tier One and Two Levels[1] for Facility Discharges**

| Contaminant | Tier One Limit | Tier Two Limit |
| --- | --- | --- |
| | *Applicable Basin Plan value (salt or freshwater dependent)* | |
| Oil and grease | -- | 15 mg/L |
| Total Suspended Solids | -- | 100 mg/L |
| Chemical Oxygen Demand | -- | 120 mg/L |
| Total Recoverable Copper | 4.8 ug/L (CTR) | 63.6 ug/L |
| Total Recoverable Lead | 10 ug/L (BP) | 81.6 ug/L |
| Total Recoverable Zinc | 20 ug/L(BP) | 117 ug/L |
| | | |
| Total Recoverable Iron | -- | 1000 ug/L |
| Total Recoverable Mercury | 0.1 ug/L (BP) | 2.4 ug/L |
| Total Recoverable Nickel | 2 ug/L (BP) | 1417 ug/L |
| | | |
| Nitrate and Nitrite Nitrogen | | 680 ug/L |
| pH | -- | 6-9 units |

[1] Several of the Numeric Limits are hardness dependent. The hardness dependent limits are in bold. The 2008 EPA Benchmark based limits expressed assume hardness of 101 mg/l CaCO$_3$. Defendants shall adjust the limit using the methods provided in Appendix J of the 2008 EPA Multi-Sector General Permit and/or the California Toxics Rule as applicable.